## Williams' Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the following extracts from the adjudications of

VAN DUSEN, J., Auditing Judge.—

### John Roger Williams Estate

This is the account of Northern Central Trust Company, guardian of John Roger Williams, a minor, stated by the secretary of banking in charge of the trust company. The account is filed not only because of the closing of the trust company and the determination of the secretary to liquidate its affairs, but also because the minor came of age April 12, 1932. The minor objected to certain investments.

The guardian on May 14, 1931, invested $2950 of principal in a participation certificate No. 235 of that amount in a mortgage dated December 6, 1928, by Joseph B. Friedman and wife, of $30,000 on unimproved lots at Frontenac, Unruh and Fanshaw Streets in the Thirty-fifth Ward of the City of Philadelphia. This mortgage was originally taken in favor of Northern Central Trust Company and assigned on March 6, 1929, to Northern Central Trust Company as trustee for sundry trusts. At that time the various shares in the mortgage were not allocated to any specific trusts and no part was allocated to the present account, the taxes for 1930 on the mortgaged premises were unpaid and delinquent, and the semi-annual interest due in the preceding December had been paid in two instalments in January. The money which was so invested was received by the guardian about that time from the estate of the ward's mother, and it was paid by the trust company as guardian to itself as beneficial owner of a $2950 interest in the said mortgage, and was placed in the general funds of the trust company. The mortgaged premises were unimproved and unproductive, and at the time of the investment were of the fair value of $30,000 (the amount of the mortgage). There is no evidence that the trust company had any reappraisal of the mortgaged premises made at the time of the investment. The present value of the mortgage participation certificate is one-fourth, or $737.50. No interest has been paid on it.

On May 14, 1931, the guardian invested $313.46 of principal and $336.54 of income, a total of $650, in a participation certificate No. 236 of that amount in a mortgage dated August 3, 1928, by Joseph B. Friedman and wife, of $35,000 on unimproved lots at Magee and Frontenac Streets in the Thirty-fifth Ward of the City of Philadelphia. This mortgage was originally taken in favor of Northern Central Trust Company and assigned on March 6, 1929, to Northern Central Trust Company as trustee for sundry trusts. At that time the various shares in the mortgage were not allocated to any specific trusts, and no part was allocated to the present account. On May 14, 1931, when the allocation was made to this account, the taxes for 1930 on the mortgaged premises were unpaid and delinquent, and the semi-annual interest due in February preceding had been paid in two instalments in March. The money which was so invested was received by the guardian about that time from the estate of the ward's mother, and it was paid by the trust company as guardian to itself as beneficial owner of a $650 interest in the said mortgage, and was placed in the general funds of the trust company. The mortgaged premises were unimproved and unproductive, and at the time of the investment were of the fair value of $35,000 (the amount of the mortgage). There is no evidence that the trust company had any reappraisal of the mortgaged premises made at the time of the investment. There was no occasion to invest income. The present value of the $650 participation certificate is one-fourth, or $162.50. No interest has been paid on it. I

find that Northern Central Trust Company was negligent in making these investments.

Counsel for the late minor argued from the agreed facts, which are contained in the stipulation attached hereto, that he could follow the trust funds of the minor into the general funds of the trust company, and that he is entitled to priority of payment in full, and that this court should pass on the question of priority and make an order on the secretary of banking in charge for unconditional payment. For the reasons given in the adjudication of the estate of Miller Williams, a minor, filed herewith, I reject this contention and will attempt to determine only the amount of the surcharge.

It is evidently the intention of counsel for the late minor to abandon the investment and to hold to his priority claim with respect to the surcharge. I think, however, that the late minor should have the option to take the investment for what it may be worth, because he may only have standing as a general creditor for the balance.

I surcharge Northern Central Trust Company, accountant, in the sum of $3600, with interest at six per cent. upon the same sum, from May 14, 1931, to September 26, 1931, when the trust company closed. I will also award the participation certificate to the late minor. I find that the present value of the same is $900. Upon settling with the secretary of banking, the late minor must either surrender the certificate of participation or allow it as a credit in the sum of $900 as of the date of this adjudication.

The accountant asked for commissions on income, but in view of the surcharge, none will be allowed on principal or income.

## Miller Williams Estate

This is the account of Northern Central Trust Company, guardian of Miller Williams, a minor, stated by the secretary of banking in charge of the trust company. The account is filed because of the closing of the trust company and the determination of the secretary to liquidate its affairs. The succeeding guardian for the minor objected to one of the investments.

The guardian on May 14, 1931, invested $2697.58 of principal and $902.42 of income, a total of $3600, in a participation certificate No. 237 of that amount in a mortgage dated August 3, 1928, by Joseph B. Friedman and wife on unimproved lots at Magee and Frontenac Streets, in the Thirty-fifth Ward. This mortgage was originally taken in favor of Northern Central Trust Company and assigned on March 6, 1929, to Northern Central Trust Company as trustee for sundry trusts. At that time the various shares of the mortgage were not allocated to any specific trusts, and no part was allocated to the present account. On May 14, 1931, when the allocation was made to this account, the taxes for 1930 on the mortgaged premises were unpaid and delinquent, and the semi-annual interest due in February preceding had been paid in two instalments in March. The money which was so invested was received by the guardian about that time from the estate of the ward's mother, and it was paid by the trust company as guardian to itself as beneficial owner of a $3600 interest in the said mortgage, and was placed in the general funds of the trust company. The mortgaged premises were unimproved and nonproductive, and at the time of the investment were of the fair value of $35,000 (the amount of the mortgage). There is no evidence that the trust company had any reappraisement of the mortgaged premises made at the time of the investment. There was no occasion to invest income. The present value of the $3600 participation certificate is one-fourth, or $900. No interest has been paid on it.

I find that Northern Central Trust Company was negligent in making this investment.

Counsel for the succeeding guardian argued from the agreed facts, which are contained in the stipulation attached hereto, that he could follow the trust funds of the minor into the general funds of the trust company, and that he is entitled to priority of payment in full. He argued that the transaction was not really an investment, but was an appropriation of the minor's money to the benefit of the guardian (which it pretty nearly was) and was, therefore, a nullity. The Banking Act of June 15, 1923, P. L. 809, Sec. 40 (f), provides that surcharges with respect to trust funds shall be unpreferred claims against the general funds of a defunct trust company. Whether this statute is applicable to the case of following trust funds, and whether the present case presents that situation, is not for me to decide.

Section forty (d) of the same act gives exclusive jurisdiction of such questions to the court having charge of the liquidation proceedings. It is argued that the constitutional jurisdiction of this court to supervise the accounts of guardians cannot be taken away by statute. But that jurisdiction is only to dispose of questions arising between the guardian and the ward, to wit, the amount, and not questions arising between the ward and other creditors of, or persons having to do with, the guardian. The orderly administration of the affairs of any insolvent person or institution requires that one court alone should determine priority of payment. Otherwise there might be conflicting judgments of various courts. That would be the rule if there was no statute. See Cameron, Secretary of Banking, v. Bankers Trust Co., 14 D. & C. 715. I can, therefore, make no order on the secretary of banking.

It is evidently the intention of counsel for the succeeding guardian to abandon the investment and hold to his priority claim with respect to the surcharge. I think, however, that the succeeding guardian should have the option to take the investment for what it may be worth, because it may only have standing as a general creditor for the balance.

I surcharge Northern Central Trust Company, accountant, in the sum of $3600, with interest at six per cent. upon the same sum from May 14, 1931, to September 26, 1931, when the trust company closed. I will also award the participation certificate to the succeeding guardian. I find that the present value of the same is $900. Upon settling with the secretary of banking, the guardian must either surrender the certificate of participation or allow it as a credit in the sum of $900 of the date of this adjudication.

*Todd Daniel*, for accountant.

*Ashton Locke Worrall*, for substituted guardian and minor.

SINKLER, J., April 28, 1933.—The pertinent facts are related in the two adjudications. Additional evidence of disregard by the guardian of the wards' welfare is found in the fact that investment of accrued income resulted in the discontinuance, for a time at least, of an order made by this court for the support of the wards.

Exceptions have been filed to both adjudications by the secretary of banking in charge of the affairs of the accountant: (1) To the finding of the auditing judge that the present value of the mortgage participation certificates, in which the minors' estates are invested, is one-fourth of the face value thereof; (2) to his finding that the accountant was negligent in making these investments; (3) to his surcharging the accountant with the amounts invested in the mortgage participation certificates; to his award of the certificates to the late minor and the substituted guardian respectively at one-fourth of their face

value; to his direction that upon settling with the secretary of banking the late minor and the substituted guardian respectively must either surrender the certificates or allow them as credits in the amount of one-fourth of the face value thereof; (4) to the disallowance of commissions on income by reason of the surcharge.

The late minor and the substituted guardian of the minor have filed nine exceptions to the adjudication. The gist of these is that the guardian, in purchasing from itself for the investment of funds belonging to its wards participation in defaulted mortgages secured upon unimproved and unproductive lands, appropriated to itself moneys belonging to its wards; that this action constituted a fraudulent conversion of the moneys so appropriated; that the guardian is to that extent a trustee ex maleficio; that an order should have been made by the auditing judge upon the accountant for unconditional payment to the late minor and to the substituted guardian of the minor; that the misappropriated principal and income had been traced into a special account of the guardian, and that the moneys so traced were the property of the wards now in the possession of the secretary of banking; and that by reason of the fraudulent conversion of the wards' moneys and the tracing thereof into the hands of the secretary of banking as accountant, the orphans' court had jurisdiction over the secretary of banking. In his failing so to find as to all these matters, the late minor and the substituted guardian of the minor allege the auditing judge erred and as well in his finding that the wards were seeking priority in payment against the funds of the bank.

We are agreed that the exceptions filed by the accountant should be dismissed on grounds that are sufficiently set forth in the adjudication.

As to the exceptions filed by the late minor and the substituted guardian of the minor, the majority of the court consider that the findings of the auditing judge are correct. The guardian, the owner of certain mortgages, transferred to itself as guardian of these two wards part or fractional interests in these mortgages. However improvident the investment and while, as the auditing judge says, the transaction verged upon an appropriation of the wards' money for the benefit of the guardian, there is nothing wrong upon its face. If the guardian failed to use due care in making the investment it is properly surcharged. We do not consider that this court has authority to allocate the funds of the trust company guardian, whose affairs are in the hands of the secretary of banking under the jurisdiction of the court of common pleas. The auditing judge has correctly construed section forty(d) of The Banking Act of 1923 in its application to this question. We dismiss the exceptions without prejudice to the rights of the late minor and of the substituted guardian of the minor to present their claims and contentions in the court of common pleas upon the audit of the affairs of the trust company.

All the exceptions to both the adjudications are dismissed, and the adjudications are confirmed absolutely.

HENDERSON, J., dissenting.—I disagree with the auditing judge and with the majority opinion in holding that these investments were simply improvident. From the facts as recited in the adjudications, and the further fact that the guardian was purchasing these investments from itself, I would conclude that the guardian was guilty of a fraudulent conversion of the assets of these minors for its own benefit.

I cannot regard the facts as constituting mere negligence or improvidence. A chancellor should hold his nose at the facts of these transactions.

While it is undoubtedly true that we have no control over the assets of the trust company and could make no order upon them in the hands of the secretary

230

of banking, nevertheless it is the function of this court alone to fix the nature of the claim which must then be presented to the court of common pleas auditing the banking commissioner's account for allowance. It may make a great difference to these minors whether they have an uncollectible surcharge or whether this guardian is guilty of a fraud and has become a trustee de son tort, in which case it will be for the court of common pleas to determine if these minors are entitled to a preference under the doctrine enunciated by Judge Finletter in his adjudication of the account in In re Bankers Trust Company, to which no exceptions were filed.